# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| BRYAN A. DURHAM, | ) | CASE NO. 1:18-cv-2520 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION AND |
| | ) | ORDER |
| WARDEN DAVE MARQUIS, | ) | |
| | ) | |
| RESPONDENT. | ) | |

Before the Court is the report of Magistrate Judge Jonathan Greenberg recommending that the petition brought by *pro se* petitioner Bryan Durham ("Durham") under 28 U.S.C. § 2254 (Doc. No. 1) be dismissed in part and denied in part ("R&R"). (Doc. No. 10.) Durham objected to the recommendations,[1] which the Court will consider timely filed for the purpose of this analysis.[2] (Doc. No. 11.) Respondent Warden Marquis did not respond to Durham's objections or file his own objections.

For the reasons contained herein, Durham's objections are overruled, the R&R is adopted, and Durham's petition is denied and dismissed in its entirety.

---

[1] Embedded within his objections, Durham made a request/motion for discovery upon which the Court has already ruled. (*See* Doc. No. 12.)

[2] Durham was advised by the magistrate judge that 28 U.S.C. § 636(b)(1) requires objection to the R&R to be filed within fourteen (14) days after being served with a copy of the R&R. (Doc. No. 10 at 50 [Page number references are to the page numbers assigned to each individual document by the Court's electronic filing system, a practice recently adopted by the Court.].) Durham states that he received the R&R on July 7, 2020. (Doc. No. 11 at 1.) Durham's objections were filed July 30, 2020. (*Id.*) Durham states that he delivered his objections to prison officials on July 21, 2020, and asks the Court for liberal consideration of the time that his objections were received by the Court in light of prison restrictions put in place to limit the spread of COVID-19. (*Id.* at 2.) The Court will assume for the purpose of this analysis that Durham's objections were timely filed under the statute.

# I. Background

Durham was indicted[3] in May 2014 and convicted in January 2015 for aggravated murder, murder, and felonious assault with respect the death of Herman Coleman ("Coleman") in April 2014. The factual background underlying Durham's conviction in Cuyahoga County Court of Common Pleas case CR-14-585105-A ("Criminal Case") is extensively quoted in the R&R as summarized by the state appellate court on direct appeal.[4] (Doc. No. 10 at 2–21 (citing *State v. Durham*, 60 N.E.3d 552, 557–71 (Ohio Ct. App. 2016).)

The R&R also summarizes the procedural history of state court proceedings concerning Durham's indictment and conviction, including trial court proceedings, direct appeal, petition for post-conviction relief, application to reopen appeal, resentencing, and motion for delayed appeal. (*Id.* at 21–25.) In his objection to the R&R, Durham "essentially adopts" the background set forth in the R&R.  (Doc. No. 11 at 3.) Accordingly, the Court adopts the magistrate judge's summary and will provide additional factual and procedural detail as necessary for analysis of Durham's objections.

---

[3] Durham was indicted for one count of aggravated murder (Ohio Rev. Code § 2903.01(A)) with firearm specifications (Count 1), one count of murder (Ohio Rev. Code § 2903.02(B)) with firearm specifications (Count 2), two counts of felonious assault (Ohio Rev. Code § 2903.11(A)(1) & (2)), each with firearm specifications and repeat violent offender ("RVO") specifications (Counts 3 and 4), and one count of having weapons under disability (Ohio Rev. Code § 2923.13(A)(2) (Count 5). Durham pled not guilty to all charges and waived a jury trial as to Count 5. The jury found Durham guilty on Counts 1–4, and the trial court found Durham guilty on Count 5. (*See* Doc. No. 10 at 21.) The parties agreed that Counts 1–4 were allied offenses and that the one- and three-year gun specifications should merge. (*Id.* at 21-22.)

[4] Durham "objects" to various factual findings made by the magistrate judge. (*See* Doc. No. 11 at 9–10.) But those "findings" simply quote the statements contained in the opinion of the court of appeals considering Durham's direct appeal regarding the sufficiency and manifest weight of the evidence supporting his convictions. A state court's factual findings are presumed to be correct and, while Durham may disagree, he has not rebutted that presumption of correctness by clear and convincing evidence. *See Schriro v. Landrigan*, 550 U.S. 465, 473–74, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007) (citing 28 U.S.C. § 2254(e)(1)).

In his habeas petition, Durham raises four grounds for relief from his conviction and sentence in the Criminal Case. In the R&R, the magistrate judge recommends that Grounds Two,[5] Three,[6] and Four[7] be dismissed as procedurally defaulted (Doc. No. 10 at

---

[5]  Ground Two, brought under the Fourteenth Amendment, claims:

> The evidence is insufficient to show that it was possible for Petitioner to travel from a remote part of town to meet up with the victim, take him to the back of a warehouse, shoot him and clean up all traces of blood and DNA evidence within approximately 20 minutes. Although Petitioner was not convicted on the merged counts of murder and felonious assault the jurors returned guilty verdicts based on insufficient evidence. Petitioner was denied due process of law when the court refused to grant a motion for a judgment of acquittal.

(Doc. No. 1 at 7; Doc. No. 10 at 26.)

[6]  Ground Three, brought under the Fourteenth Amendment, claims:

> Petitioner was denied due process of law when the court refused to grant a motion for judgment of acquittal where there was insufficient evidence to permit a rational fact finder to return a verdict of guilty. Petitioner was entitled to a new trial as the verdicts were against the manifest weight of the evidence.

(Doc. No. 1 at 8; Doc. No. 10 at 26.)

[7]  Ground Four, brought under the Fifth, Sixth, and Fourteenth Amendments, claims:

> Petitioner was denied due process of law when the court sentenced and convicted him for murder on remand, as charged under count 2 of the indictment. Prior to his direct appeal Petitioner was tried and could be convicted of one offense only. Petitioner was first convicted of aggravated of aggravated [sic] murder only, as charged in count 1 of the indictment. The trial court did not sentence and convict Petitioner of additional counts of felony murder and felonious assault, because they were allied offenses of the same import as aggravated murder. Petitioner was denied effective assistance of appeal counsel at the remand hearing. Counsel failed to address court's plain error when it convicted him twice on the same offense. Moreover, counsel neglected to file an appeal to correct the void sentence.

(Doc. No. 1 at 10; Doc. No. 10 at 26–27.)

29–36), and that Durham's claim in Ground One[8] be denied on the merits (*id.* at 38–50). Durham objects to the recommendation as to all grounds for relief.

## II. Legal Standard of Review

### A.  28 U.S.C. § 636(b)(1)(C)

Under 28 U.S.C. § 636(b)(1)(C), "[a] judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *See also Powell v. United States*, 37 F.3d 1499 (Table), 1994 WL 532926, at *1 (6th Cir. Sept. 30, 1994) ("Any report and recommendation by a magistrate judge that is dispositive of a claim or defense of a party shall be subject to de novo review by the district court in light of specific objections filed by any party."); Fed. R. Civ. P. 72(b)(3) ("[t]he district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to."). "An 'objection' that does nothing more than state a disagreement with a magistrate's suggested resolution, or simply summarizes what has been presented before, is not an 'objection' as that term is used in this context." *Aldrich v. Bock*, 327 F. Supp. 2d 743, 747 (E.D. Mich. 2004). "[O]bjections must be clear enough to enable the district court to discern those issues that are dispositive and contentious." *Miller v. Currie*, 50 F.3d 373, 380 (6th Cir.

---

[8]  Ground One, brought under the Fourth and Sixth Amendments, has two components:

> 1. Petitioner was denied his right to effective assistance of trial counsel, as guaranteed by the Sixth Amendment under the United States Constitution, where trial counsel failed to file a motion to suppress Petitioner's statement made during a custodial interrogation while being held in a police zone car.
> 2. Counsel's performance fell below an objective standard of reasonableness where he failed to file a motion to suppress evidence seized from Petitioner's vehicle without a warrant, probable cause or a reasonable suspicion that criminal activity was afoot in violation of the Fourth Amendment.

(Doc. No. 1 at 5; Doc. No. 10 at 26.)

1995) (citation omitted). "'[O]bjections disput[ing] the correctness of the magistrate's recommendation but fail[ing] to specify the findings ... believed [to be] in error' are too general." *Spencer v. Bouchard*, 449 F.3d 721, 725 (6th Cir. 2006) (quoting *Miller*, 50 F.3d at 380), *abrogated on other grounds by Jones v. Bock,* 549 U.S. 199, 127 S. Ct. 910, 166 L. Ed. 2d 798 (2007). After review, the district judge "may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

### B. AEDPA

Although the Court must review de novo any matter properly objected to, in the habeas context, it must do so under the deferential standard of the Antiterrorism and Death Penalty Act of 1996 ("AEDPA.") Under AEDPA:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1)–(2).

As to the first prong,

> [A] decision of the state court is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." [citation omitted]. . . . [A]n "unreasonable application" occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decision but unreasonably applies that

principle to the facts of the prisoner's case." [citation omitted]. A federal
habeas court may not find a state adjudication to be "unreasonable" "simply
because that court concludes in its independent judgment that the relevant
state-court decision applied clearly established federal law erroneously or
incorrectly." [citation omitted].

*Harris v. Stovall*, 212 F.3d 940, 942 (6th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S.

362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000)).

With respect to the second prong, federal courts must "presume the correctness of

state courts' factual findings unless applicants rebut this presumption with 'clear and

convincing evidence.'" *Schriro v. Landrigan*, 550 U.S. at 473–74 (citing 28 U.S.C. §

2254(e)(1)).

Under AEDPA's deferential habeas review standard, the question before the Court

on de novo review "is not whether a federal court believes the state court's determination

was incorrect but whether that determination was unreasonable—a substantially higher

threshold." *Id*. at 473 (citing *Williams,* 529 U.S. at 410). In order to obtain habeas corpus

relief from a federal court, "a state prisoner must show that the state court's ruling on the

claim being presented in federal court was so lacking in justification that there was an error

well understood and comprehended in existing law beyond any possibility for fairminded

disagreement." *Harrington v. Richter*, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624

(2011).

### III. Discussion

#### A.  Ground One

Durham contends in Ground One that he was denied his constitutional right to

effective assistance counsel because trial counsel failed to move to suppress (1) statements

that he made during a custodial interrogation without the benefit of a *Miranda* warning,

and (2) evidence seized from his vehicle "without a warrant, probable cause or a reasonable suspicion that criminal activity was afoot in violation of the Fourth Amendment." (Doc. No. 1 at 5; Doc. No. 10 at 26.)

Durham raised both claims of ineffective assistance of trial counsel on direct appeal.[9] After a lengthy analysis, the Ohio Court of Appeals concluded that Durham's trial counsel was not ineffective for failing to move to suppress Durham's statements or evidence obtained from the seizure and search of Durham's vehicle. *See Durham*, 60 N.E.2d at 577–81 (citing among authority *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1998)). Durham appealed that decision to the Ohio Supreme Court, which declined jurisdiction. *State v Durham*, 52 N.E.3d 1204 (Table) (Ohio 2016).

### 1. The R&R and Durham's objections

Upon review of Ground One under AEDPA, the magistrate judge found that the state court correctly identified *Strickland* as the standard for assessing Durham's ineffective assistance of counsel claims, and the state court's application of that standard was neither contrary to nor an objectively unreasonable application of *Strickland*. Thus, the magistrate judge recommended that Ground One be denied on the merits in its entirety. (Doc. No. 10 at 44–50.)

In his objections, Durham makes only a passing reference to his ineffective assistance of counsel claim with respect to evidence obtained from an alleged

---

[9] The magistrate judge noted that Durham worded his habeas claim for ineffective assistance of counsel concerning his statement to the police differently than his attorneys did before the state appellate court and the Ohio Supreme Court.  But the magistrate judge construed Durham's petition broadly and determined that the claim in the petition is essentially the same claim as raised on direct appeal, and it is respondent's position that this claim was raised and addressed on the merits by the state appellate court and the Ohio Supreme Court. (*See* Doc. No. 10 at 39 n.6 (citations to the record omitted).)

unconstitutional seizure and search of his vehicle, stating only that: "[A]ssuming that Durham's suppression motion would have been granted, and the statements and items of evidence taken out of the 2001 Taurus would have been excluded, much of the other remaining compelling evidence against him would not have existed if properly challenged." (Doc. No. 11 at 21–22.) Beyond this brief statement, Durham does not make a specific objection to the extensive analysis in the R&R of his claim that trial counsel was ineffective for failing to move to suppress the evidence from his vehicle. Because Durham has failed to assert a proper objection regarding this issue, the Court, without further review, adopts the recommendation of the magistrate judge on this issue. *See* 28 U.S.C. § 636(b)(1)(C); *Powell,* 1994 WL 532926, at *1.

Durham filed lengthy objections to the R&R concerning ineffective assistance of trial counsel for failing to move to suppress Durham's statements to the police, both with respect to whether he was in custody and whether he was prejudiced by counsel's failure to seek suppression of his statements. (Doc. No. 11 at 18–26.) Accordingly, the Court will conduct a de novo review of those issues.[10]

---

[10] In Ground One of his habeas petition, Durham does not claim that his trial counsel was ineffective for failing to investigate various aspects of the events that transpired and resulted in Durham's indictment. But in his objections, Durham repeatedly argues that his counsel failed to conduct a proper investigation and appears to contend that this failure is the foundation for counsel's failure to move to suppress Durham's statements to the police. (*See* Doc. No. 11 at 20–21.) Durham did not raise claim for ineffective assistance of trial counsel for failure to investigate on direct appeal, in his habeas petition, or in his traverse. Durham did raise the issue of ineffective assistance of trial counsel for failure to investigate in his post-conviction petition, but the petition was denied by the trial court and he did not appeal the denial of his post-conviction petition. (*See* Doc. No. 10 at 23.) Therefore, this issue is not properly before the Court and will not be further addressed herein. *See Enyart v. Coleman,* 29 F. Supp. 3d 1059, 1070 (N.D. Ohio 2014) ("'[A]bsent compelling reasons, [the Magistrate Judge Act] does not allow parties to raise at the district court stage new arguments or issues that were not presented to the magistrate.'") (quoting *Murr v. United States,* 200 F.3d 895, 902 n.1 (6th Cir. 2000)); *see also Williams v. Forshey,* No. 2:20-cv-5460, 2021 WL 2102504, at *2 (S.D. Ohio May 25, 2021).

**2. De novo review**

In reviewing the state court's decision under the AEDPA standard of review, the Court begins with the law relevant to Ground One of Durham's habeas petition—ineffective assistance of trial counsel as pertains to Durham's statements to the police.

### *Strickland v. Washington*

Under the constitution, "the proper standard for attorney performance is that of reasonably effective assistance." *Strickland*, 466 U.S. at 687 (citation omitted). Judicial scrutiny of counsel's performance is highly deferential, and the Court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance[.]" *Id.* at 689.

A claim for ineffective assistance of counsel has two components. First, "defendant must show that counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. Second, "defendant must show that the deficient performance prejudiced the defense." *Id*. at 687. "Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id*. at 687.

On habeas review of a claim for ineffective assistance of counsel:

> The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), 'an *unreasonable* application of federal law is different from an *incorrect* application of federal law.' *Williams*, [529 U.S. at 410]. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Harrington*, 562 U.S. at 101 (emphases in original).

In other words, when reviewing a state court's ruling on an ineffective assistance of counsel claim, federal habeas courts must utilize a "'doubly deferential' standard of review that gives both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15, 134 S. Ct. 10, 187 L. Ed. 2d 348 (2013) (quoting *Cullen v. Pinholster,* 563 U.S. 170, 190, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) ("We take a 'highly deferential' look at counsel's performance, *Strickland,* [466 U.S. at 689], through the 'deferential lens of § 2254(d),' [*Knowles v. Mirzayance,* 556 U.S. 111, 121 n.2, 129 S. Ct. 1411, 173 L. Ed. 2d 251 (2009) (further citation omitted)].").

### Miranda v. Arizona

Durham claims that trial counsel was ineffective for failing to move to suppress his statements to the police, which were made without the benefit of a *Miranda* warning. In *Miranda v. Arizona*, the Supreme Court held that, under the Fifth Amendment of the United States Constitution, persons taken into custody or otherwise deprived of their freedom must be advised of certain rights prior to questioning, including their right to remain silent. *See Miranda v. Arizona*, 384 U.S. 436, 444, 471–78, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966). "*Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.'" *Oregon v. Mathiason*, 429 U.S. 492, 495, 97 S. Ct. 711, 50 L. Ed. 2d 714 (1977). Statements made by a defendant in custody without being advised of his rights and a valid waiver cannot be used against the defendant in a criminal trial. *Miranda,* 384 U.S. at 479.

The *Miranda* custody test is an objective test:

"Two discrete inquiries are essential to the determination: first, what were the circumstances surrounding the interrogation; and second, given those

circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave. Once the scene is set and the players' lines and actions are reconstructed, the court must apply an objective test to resolve the ultimate inquiry: was there a formal arrest or restraint on freedom of movement of the degree associated with a formal arrest."

*Yarborough v. Alvarado*, 541 U.S. 652, 663, 124 S. Ct. 2140, 158 L. Ed. 2d 938 (2004) (internal quotation marks and footnote eliminated) (quoting *Thompson v. Keohane,* 516 U.S. 99, 112, 116 S. Ct. 457, 133 L. Ed. 2d 383 (1995)); *see also United States v. Martinez*, 795 F. App'x 367, 372 (6th Cir. 2019) (whether an individual is "in custody" for *Miranda* purposes "is determined by the objective perception of a reasonable man in the defendant's shoes[]") (quoting *United States v. Galloway*, 316 F.3d 624, 629 (6th Cir. 2003) (citing *Stansbury v. California*, 511 U.S. 318, 323, 114 S. Ct. 1526, 128 L. Ed. 2d 293 (1994)) and citing *United States v. Ray*, 803 F.3d 244, 266 n.12 (6th Cir. 2015) (quoting *Yarborough*, 541 U.S. at 667)).

### 3.  State court decision

On direct appeal, the state court addressed Durham's assignment of error that trial counsel was ineffective for failing to move to suppress his statements made to the police without a *Miranda* warning. In concluding that Durham's ineffective assistance of counsel claim lacked merit, the appellate court engaged in a two-step process. First, the state court determined that Durham was not "in custody" for *Miranda* purposes when he made the statements at issue and, therefore, counsel was not ineffective for failing to move to suppress those statements. And second, even if Durham was "in custody" and made the statements without being provided with a *Miranda* warning, he was not prejudiced by counsel's failure to seek suppression of those statements because other overwhelming evidence in the case placed him at the property when Coleman was killed.

11

### 4.  Counsel not ineffective because Durham was not "in custody"

In determining that counsel was not ineffective for failing to seek suppression of Durham's statements to the police because Durham was not "in custody," the state appellate court provided as follows:

**Ineffective Assistance of Counsel**

{¶ 163} We now address Durham's remaining assignment of error, that defense counsel's failure to file a motion to suppress the three-hour interview with homicide detectives conducted without a *Miranda* warning. . . constitutes ineffective assistance of counsel. We disagree.

**1.       Standard of Review**

{¶ 164} In order to substantiate a claim of ineffective assistance of counsel, the appellant must show that: (1) counsel's performance was deficient; and (2) the deficient performance prejudiced the defendant so as to deprive him of a fair trial. *State v. Trimble,* 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 98, citing *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Judicial scrutiny of defense counsel's performance must be highly deferential. *Strickland,* 104 S.Ct. at 2065. In Ohio, there is a presumption that a properly licensed attorney is competent. *State v. Calhoun,* 86 Ohio St.3d 279, 714 N.E.2d 905 (1999).

**2.       Analysis**

{¶ 165} The failure of trial counsel to file a motion to suppress "does not constitute per se ineffective assistance of counsel." *State v. Madrigal,* 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), quoting *Kimmelman v. Morrison,* 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986)." *State v. Neyland,* 139 Ohio St.3d 353, 2014-Ohio-1914, 12 N.E.3d 1112, ¶ 126. A defendant must prove that there was a basis to suppress the evidence in order to establish ineffective assistance of counsel. *State v. Brown,* 115 Ohio St.3d 55, 2007-Ohio-4837, 873 N.E.2d 858, ¶ 65, citing *State v. Adams,* 103 Ohio St.3d 508, 2004-Ohio-5845, 817 N.E.2d 29, ¶ 35.

{¶ 166} An appellant has not met his burden of proving that his attorney violated an essential duty by failing to file the motion where the record "contains no evidence which would justify the filing of a motion to suppress." *State v. Drummond,* 111 Ohio St.3d 14, 2006-Ohio-5084, 854 N.E.2d 1038, ¶ 208, quoting *State v. Gibson,* 69 Ohio App.2d 91, 95, 430 N.E.2d 954 (8th Dist.1980). "'Even if some evidence in the record supports a motion to suppress, counsel is still considered effective if counsel could

reasonably have decided that filing a motion to suppress would have been a futile act.'" *State v. Moon,* 8th Dist. Cuyahoga No. 101972, 2015-Ohio-1550, 2015 WL 1851496, ¶ 28, quoting *State v. Suarez,* 12th Dist. Warren No. CA2014–02–035, 2015-Ohio-64, 2015 WL 135434, ¶ 13; *State v. Witherspoon,* 8th Dist. Cuyahoga No. 94475, 2011-Ohio-704, 2011 WL 550124, ¶ 33 ("[t]he failure to do a futile act cannot be the basis for claims of ineffective assistance of counsel and is not prejudicial.").

### a. The Interview Videotape

{¶ 167} Durham argues that his statement was used against him to show that Durham may have been lying about speaking with Coleman shortly before his death. Statements made by a suspect may not be used in evidence where those statements were made during a custodial interrogation unless *Miranda* warnings were properly given to the suspect. *State v. Andrews,* 3d Dist. Allen No. 1–05–70, 2006-Ohio-3764, 2006 WL 2044942, citing *Miranda v. Arizona,* 384 U.S. 436, 444, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Appellant argues that counsel was ineffective by failing to file a motion to suppress the statement because Durham was not *Mirandized.*

{¶ 168} A court must look at the totality of the circumstances in order to determine whether an individual is in custody at any given time. *California v. Beheler,* 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). *Id.* at 1125, 103 S.Ct. 3517. *Miranda* warnings are required where an individual is subject to custodial interrogation, defined as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in a significant way." *Miranda* at 444, 86 S.Ct. 1602.

{¶ 169} Interrogation is defined as any "statement, question or remark by a police officer * * * reasonably likely to elicit an incriminating response * * *." *In re Forbess,* 3d Dist. Auglaize No. 2–09–20, 2010-Ohio-2826, 2010 WL 2488064, citing *State v. Knuckles,* 65 Ohio St.3d 494, 605 N.E.2d 54 (1992), paragraph two of the syllabus. "[A] person is considered in custody for purposes of *Miranda* when he is placed under formal arrest or his freedom of action is restrained to a degree associated with a formal arrest." *Id.,* citing *State v. Simpson,* 10th Dist. Franklin No. 01AP–757, 2002-Ohio-3717, 2002 WL 1625559. The appropriate inquiry for determining if an individual has been placed in custody is whether, under the totality of the circumstances, a reasonable person would believe he is not free to leave. *State v. Gumm,* 73 Ohio St.3d 413, 429, 653 N.E.2d 253 (1995), citing *United States v. Mendenhall,* 446 U.S. 544, 554, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980).

{¶ 170} According to the record, Durham entered the police car voluntarily after Officer McMahon asked him whether he would be willing to meet with

homicide detectives. Testimony demonstrates the temperature was about 32 degrees so the officer's explanation about Durham waiting inside the police car pending a meeting with the homicide detectives was reasonable under the circumstances. Durham was not cuffed or restrained and was freely speaking on his cell phone. Officer Tate was doing paperwork in the front seat and Durham did not ask to exit the vehicle.

{¶ 171} Durham was taken to the police station for the interview for videotaping. *Miranda* warnings are not required simply because questioning takes place in a courthouse or police station. *California v. Beheler,* 463 U.S. 1121, 103 S.Ct. 3517, 77 L.Ed.2d 1275 (1983). Upon a review of the videotape, Durham was quite conversational and voluntarily talked at length. Durham did not ask to terminate the interview, and he was in no way restrained. There was no confession to the crime. At the conclusion of the interview, he was returned to the Fourth District police station where Pankey picked him up. Thus, we do not find that, under a totality of the circumstances, a reasonable person would believe he was not free to leave. *Mendenhall* at 554, 100 S.Ct. 1870.

*Durham*, 60 N.E.3d. at 577–79.[11]

In objecting to the R&R on the issue of whether he was "in custody" when he was in the police car at the scene and during the three-hour taped interview at the homicide detectives' downtown district office, Durham points to the portion of the R&R which quotes from state court opinion concerning his direct appeal. (*See* Doc. No. 11 at 18–20.)

As stated by the appellate court on direct appeal:

{¶ 20} Officer Ryan McMahon ("Officer McMahon") responded to a dispatch call to the crime scene to assist officers and emergency medical service personnel with securing the scene. Officer Eddie Robinson ("Officer

---

[11] Durham asserts a brief "objection" to the state court's reliance on *California v. Beheler*, 463 U.S. 1121, 103 S. Ct. 3517, 77 L. Ed. 2d 1275 (1983) and *United States v. Mendenhall*, 446 U.S. 544, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980). (Doc. No. 11 at 18.) Durham did not raise this issue in his traverse (*see* Doc. No. 9) notwithstanding the respondent's citation to the *Yarborough* test in the return of writ (Doc. No. 6 at 35). To the extent that Durham is attempting to raise in his objection a new constitutional claim concerning the state court proceedings, he may not do so. *See Williams*, 2021 WL 2102504, at *2 ("It is axiomatic that a habeas petitioner may not add a new claim as part of a traverse. *Jalowiec v. Bradshaw*, 657 F.3d 293 (6th Cir. 2011) (citing *Tyler v. Mitchell*, 416 F.3d 500, 504 (6th Cir. 2005)). For the same reasons, it is inappropriate to raise a new constitutional claim for the first time in objections to a R&R on the merits."). And to the extent that Durham contends that the magistrate judge applied incorrect state law in determining on habeas review that Durham was not in custody (Doc. No. 11 at 26 (citing *Cleveland v. Oles*, 92 N.E.3d 810 (Ohio 2017)), the Court need not separately address this issue because the Court is conducting a de novo review.

Robinson") told Officer McMahon that several family members informed him that Durham was on the scene, and that Durham was the last person to see Coleman alive. Officer McMahon approached Durham, who was standing away from the family, and asked whether Durham would accompany him to speak with homicide detectives since he might be a witness. Durham agreed.

{¶ 21} Durham accompanied Officer McMahon to the police car to wait due to the cold weather. Officer McMahon said Durham entered voluntarily and was driven downtown to meet with homicide detectives. After the interview, Durham was driven to the Fourth District police station and released.

*Durham*, 60 N.E.3d at 559.

{¶ 23} Officer Martin Tate ("Officer Tate") accompanied Officer McMahon to the scene and assisted with securing the location. Officer Tate was sitting in the front seat of the zone car doing paperwork when Durham entered the back seat. Officer Tate's understanding was that Durham was going to be driven downtown to speak with detectives because he was one of the last people to see Coleman alive.

{¶ 24} Officer Tate overheard Durham telling someone via cell phone that Durham believed Coleman had been shot in the neck. The statement attracted Officer Tate's attention because he had been informed of the cause of death about 30 minutes earlier. Prior to that point, it had not been established.

{¶ 25} Officer Tate asked Durham how he knew that Coleman had been shot in the neck. Durham said he overheard a male talking about it, but he did not know who and could not identify the person. At that point, Durham had been in the car for approximately 15 to 20 minutes and was not under arrest. There was no further conversation between Officer Tate and Durham.

*Id.* at 559–60.

{¶ 114} Detective Lynch stated that since Durham was considered a potential suspect in a murder, state law requires that the suspect's interview be videotaped and that is why Durham was brought to the office. However, he said that Durham was not under arrest, could refuse to talk to them, and was free to leave at any time. Detectives Lynch and Sandoval interviewed Durham for three hours. The trial court allowed a slightly redacted version of the videotape to be played for the jury, as stipulated by counsel for the parties.

*Id.* at 569–70.

> {¶ 121} The videotaped interview with Durham was played for the jury. Durham appeared to be cooperative and talked freely. Distilled, Durham said that he and Coleman had known each other since they were six years old and talked about how he came to work with Coleman at the property. Durham discussed the truck incident and said that the decedent and others were involved in questionable activities. According to Durham, Coleman told Durham that Willis and his friends were going to retaliate for the truck incident by breaking into the Miles property and that Durham had caused a lot of trouble. Durham said he did not know which one of the people involved in the truck incident could have killed Coleman.

*Id.* at 570–71.

> {¶ 158} Durham regularly carried a revolver or semiautomatic weapon and a shell casing was located near the body. Officer Tate testified that Durham told someone that Coleman had been shot in the neck before the authorities received that information from the medical examiner. A number of witnesses testified that Durham also failed to react with surprise when notified of Coleman's death.

*Id.* at 576.

> {¶ 170} According to the record, Durham entered the police car voluntarily after Officer McMahon asked him whether he would be willing to meet with homicide detectives. Testimony demonstrates the temperature was about 32 degrees so the officer's explanation about Durham waiting inside the police car pending a meeting with the homicide detectives was reasonable under the circumstances. Durham was not cuffed or restrained and was freely speaking on his cell phone. Officer Tate was doing paperwork in the front seat and Durham did not ask to exit the vehicle.

*Id.* at 578.

There is no disagreement that Durham was not provided with a *Miranda* warning prior to making the statements in the police car, or during the interview, which he claims his trial counsel should have sought to suppress. Durham argues that even though no formal arrest was made, his freedom of movement was restrained, and he was in custody without the benefit of a *Miranda* warning, because he was: (1) placed in the back seat of a police car wherein he was "trapped" due to automatic door locks, (2) transported to the police

department's homicide unit location, and (3) questioned for more than three hours. (Doc. No. 11 at 18–19.) He contends that his statements made during this time period "made him look more culpable than he otherwise would have" and the State presented the videotape of the three-hour interview to the jury, as well as Durham's statement in the police vehicle at the scene that the victim was "shot in the neck." (*Id*. at 19.)

### *Statement in police car*

Durham's objection regarding the issue of whether he was in custody in the rear seat of the police cruiser due to automatic door locks is overruled. "The mere fact that an individual is sitting in the back seat of a police cruiser, with rear doors that do not open from the inside, without more, is not sufficient to establish custody." *State v. Moody*, 974 N.E.2d 1273, 1277 (Ohio Ct. App. 2012) (citation omitted). Moreover, the state court determined that Durham entered the vehicle voluntarily after being asked if he would be willing to meet with homicide detectives (which was reasonable under the circumstances with an outside temperature of about 32 degrees), was not restrained, was talking on his cell phone, and did not ask to exit the vehicle, and there is no clear and convincing evidence to the contrary.

And regardless of the automatic door locks, Durham's statement that Coleman had been shot in the neck was not the result of questioning by the police and Durham does not claim otherwise. According to the record, the police were doing paperwork in the front seat of the vehicle while Durham was in the back seat of the police car talking on his cell phone. It was during a cell phone conversation that Durham told the person he was speaking with that Coleman had been shot in the neck, and the officer in the front seat of the vehicle overheard the statement. This statement made by Durham to a third party was incidentally

overheard by the police and was not subject to *Miranda* protection as it was not made as a result of police insistence, interrogation, or questioning. *United States v. Chalmers*, 554 F. App'x 440, 448 (6th Cir. 2014) (affirming denial of motion to suppress where defendant simply blurted out that he purchased the gun off the street while the police were merely completing paperwork before processing evidence and there was no evidence indicating that the officers tried to solicit the incriminating statement or that the statement was made at the officers' insistence) (citing *Rhode Island v. Innis,* 446 U.S. 291, 302, 100 S. Ct. 1682, 64 L. Ed. 2d 297 (1980) ("no response from the [suspect] was invited"); *Arizona v. Mauro,* 481 U.S. 520, 529–30, 107 S. Ct. 1931, 95 L. Ed. 2d 458 (1987) ("In deciding whether particular police conduct is interrogation, we must remember the purpose behind our decisions in *Miranda* and *Edwards:* preventing government officials from using the coercive nature of confinement to extract confessions that would not be given in an unrestrained environment.")). Upon overhearing Durham's statement on his cell phone call, the officer asked Durham how he knew where Coleman was shot, to which Durham responded that he had overheard the information, after which there was no further conversation between Durham and the officers in the vehicle.

### *Statements during police station interview*

Durham claims that the police officer's question to Durham after overhearing Durham's cell phone conversation transformed the situation from a "routine investigatory stop to a custodial interrogation." (Doc. No. 11 at 25–26.) But as he concedes, Durham was not under arrest while seated in the police car or later during the interview at the police station. (*See id*. at 18.) The detective confirmed that Durham was not under arrest at the time of the interview, could have refused to talk with the detective, and was free to leave.

*Durham,* 60 N.E.3d at 569–70. The videotaped interview shows that Durham appears to be cooperative, speaking freely and voluntarily, and was unrestrained. As determined by the state court, Durham did not confess during the interview, did not seek to terminate the interview and, when the interview was complete, he was free to leave and he did, and there is no clear and convincing evidence to the contrary. The mere fact that the interview took place at the police station does not automatically necessitate an "in custody" *Miranda* warning.

> Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him "in custody." It was that sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited.

*Oregon*, 429 U.S. at 495.

In his objection, Durham points to the appellate court opinion where his counsel objected to the introduction of the videotaped interview at trial and the trial court inquired if counsel had filed a motion to suppress (*see* Doc. No. 11 at 20):

> {¶ 119} Defense counsel objected to the admission of the three-hour videotaped interview, stating he believed that a rights form should have been executed under the circumstances. The court interrupted his recitation, asking whether counsel had filed a pretrial motion to suppress. Counsel responded, "I did not on this because I did not need to due to the fact that the contention from the State of Ohio is that it was voluntary, and I'm just bringing it to the Court's attention that in these discussions with my client, he did not feel it was voluntary." (Tr. 1682.)

{¶ 120} Durham subsequently told his attorney that he did not feel it was voluntary so counsel was posing the objection. The judge determined that the failure to file the motion to suppress constituted waiver of the issue and added that he had not heard any testimony that indicated the statement was involuntary.

*Durham*, 60 N.E.3d at 570.

But this argument does not help Durham's cause on habeas review. First, the language cited by Durham from the decision of the state appellate court indicates that trial counsel had a reason for not filing a motion to suppress—he believed Durham's interview was voluntary—and counsel is not ineffective for failing to file a futile motion. *See Hendrix v. Palmer*, 893 F.3d 906, 922 (6th Cir. 2018) (quoting *Kimmelman v. Morrison,* 477 U.S. 365, 385, 106 S. Ct. 2574, 91 L. Ed. 2d 305 (1986)) ("For such a failure to constitute deficient performance, the meritorious nature of the motion must be so plain that 'no competent attorney would think a motion to suppress would have failed.'") (quoting *Premo v. Moore*, 562 U.S. 115, 124, 131 S. Ct. 733, 178 L. Ed. 2d 649 (2011)). And second, counsel states that "[Durham] *did not feel* [the interview] was voluntary." *Durham*, 60 N.E.3d at 570 (emphasis added). The issue of whether Durham was "in custody" for *Miranda* purposes does not depend upon Durham's subjective feelings, but rather upon an objective analysis. *Martinez*, 795 F. App'x at 372 (defendant's subjective state of mind is not relevant to the objective custody analysis) (citing *Ray*, 803 F.3d at 266 n.12 ("*Miranda's* custody test does not involve consideration of the particular suspect's actual mindset.") (internal quotation marks and citation omitted)).

Upon de novo review and applying the double deferential standard of review of a *Strickland* claim under AEDPA, the Court concludes Durham has not established that the state court's application of *Strickland* to conclude that counsel was not ineffective for

failing to file a futile motion[12] because Durham was not in custody, was contrary to or an unreasonable application of clearly established law or an unreasonable application of the record evidence. *Harrington*, 562 U.S. at 101 ("The pivotal question is whether the state court's application of the *Strickland* standard was unreasonable. This is different from asking whether defense counsel's performance fell below *Strickland*'s standard.").

### 5. Counsel not ineffective because Durham was not prejudiced

After concluding that Durham was not in custody for *Miranda* purposes, the state appellate court went on to consider whether even if Durham was in custody without the benefit of a *Miranda* warning, the admission of the interview videotape was harmless—that is, Durham was not prejudiced—by counsel's failure to seek suppression of his statement. *Durham,* 60 N.E.3d at 579. The state appellate court determined any such error was harmless because "[t]here was overwhelming evidence in the record of Durham's presence at the property with Coleman" and, therefore, Durham suffered no prejudice by the admission of his statements to the police at trial. *Durham,* 60 N.E.3d at 579.

> {¶ 172} We take note of the testimony by Detective Lynch that Durham was a person of interest and was taken to the station for a videotaped interview because of state law. However, we determine that, were we to conclude that a *Miranda* violation did occur, harmless error applies:
>
>> An error in the admission of evidence is harmless when there is no reasonable possibility that the testimony contributed to the accused's conviction. *State v. Lytle,* 48 Ohio St.2d 391, 358 N.E.2d 623 (1976), at paragraph three of the syllabus. "Where constitutional error in the admission of evidence is extant, such error is harmless beyond a reasonable doubt if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." *State v. Williams* (1983), 6 Ohio St.3d 281, 452 N.E.2d 1323, paragraph six of the syllabus.

---

[12] *See Durham*, 60 N.E.3d at 577 (even if some evidence in the record may support a motion to suppress, counsel is not ineffective if he could have reasonably decided a motion would be futile) (citation omitted).

*State v. Jeffries,* 8th Dist. Cuyahoga No. 76905, 2000 WL 1222012, *3–4 (Aug. 24, 2000).

{¶ 173} There is overwhelming evidence in the record of Durham's presence at the property with Coleman as we have detailed in the sufficiency and manifest weight discussion herein. The cell tower evidence, supplemented by witness testimony, demonstrated Durham's stationary presence at the property until approximately 8:00 p.m. The O'Reilly videotape showed Durham's vehicle at the Lee and Miles intersection at approximately 7:55 p.m., concurrently with the vehicles of the witnesses that testified he was at the property. Cell phone records for the phones of Coleman and Durham show that Coleman talked with Durham briefly at 7:34 p.m. The record supports that any error for purposes of *Miranda* was harmless, and that Durham suffered no prejudice thereby.

*Id.*

Upon habeas review, the magistrate judge concluded that it was not unreasonable for the state court to determine that any error by counsel was harmless and, therefore, Durham could not establish prejudice; thus, under the double deferential standard of review, the state court's determination that trial counsel was not ineffective for failing to file a motion to suppress Durham's statements was not contrary to nor an unreasonable application of clearly established law under the double deferential standards of *Strickland* and AEDPA. (Doc. No. 10 at 47–48.)  Durham objects to the magistrate judge's conclusion that any error by trial counsel was harmless. (Doc. No. 11 at 22–24.)

Failure to file a motion to suppress does not constitute ineffective assistance *per se*. *United States v. Thomas*, 38 F. App'x 198, 201 (6th Cir. 2002) (citing *Kimmelman*). Under *Strickland*, even if counsel was unreasonable in failing to move to suppress Durham's statements to the police, the ineffective assistance claim fails in the absence of prejudice.

Durham argues in the traverse that the improper admission of his interview statements cannot be harmless error because "the government cannot prove beyond a reasonable doubt that the evidence it presented regarding [his] statements to the police on

April 15, 2014 did not contribute to the verdict obtained. To the contrary, the government relied extensively on those statement in proving its case[.]" (Doc. No. 10 at 48; Doc. No. 9 at 13.) But the applicable standard in assessing prejudice under *Strickland* is not what the government can prove, but whether Durham can show that "counsel's errors were so serious as to deprive the defendant of a fair trial[.]" *Strickland*, 466 U.S. at 687.

On AEDPA review, the question before the Court "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro*, 550 U.S. at 473. That is, whether "the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Harrington*, 562 U.S. at 103.

Given the record evidence, it was not an unreasonable application of *Strickland* for the state court to determine that Durham could not establish prejudice even if counsel were unreasonable in not seeking to suppress Durham's statements, and the state court's conclusion is not so lacking in justification that it was beyond possibility for fairminded disagreement. *Harrington,* 562 U.S. at 103.

Applying the double deferential standard of review for a habeas claim of ineffective assistance of counsel, the Court finds that the state court's conclusion that trial counsel was not ineffective for failing to file a motion to suppress was neither contrary to nor an unreasonable application of clearly established law under AEDPA and *Strickland*. Durham's objection to Ground One is overruled.

### B.  Grounds Two and Three

In Ground Two, Durham claims that the evidence was insufficient to support his convictions and he was denied due process of law when the trial court refused to grant a motion for judgment of acquittal. (Doc. No. 1 at 7; Doc. No. 10 at 26.) In Ground Three, Durham claims that he was denied due process when the trial court refused to grant a motion for judgment of acquittal when there was insufficient evidence to support a conviction and he is entitled to a new trial because the verdicts were against the manifest weight of the evidence.[13] (Doc. No. 1 at 8; Doc. No. 10 at 26.)

On direct appeal, in addition to raising his claim for ineffective assistance of trial counsel, Durham also claimed that his convictions were not supported by sufficient evidence and were against the manifest weight of the evidence. The state appellate court considered these assignments of error together for purposes of efficiency. *Durham,* 60 N.E.3d at 571. Upon review and based upon its finding regarding sufficiency, the court of appeals reversed Durham's conviction for aggravated murder,[14] affirmed his conviction for murder and felonious assault, and remanded the case for resentencing on the remaining charges of murder and felonious assault, with specifications. *Id*. at 576, 581. Represented by counsel, Durham appealed the court of appeals' ruling on his ineffective assistance of counsel claim to the Ohio Supreme Court, but did not appeal his claims concerning

---

[13] Ground Three of Durham's habeas claim is a mix of claims that the evidence is insufficient to support his convictions and that his convictions are against the manifest weight of the evidence. "It is well-settled that a habeas claim alleging that a conviction was not supported by the manifest weight of the evidence is, of itself, a non-cognizable state law claim." *Hill v. Sheldon*, No. 1:11-cv-2603, 2014 WL 700024, at *15 (N.D. Ohio Feb. 21, 2014) (citing *Johnson v. Havener*, 534 F.2d 1232, 1234 (6th Cir. 1976)). Thus, only Durham's claims concerning the sufficiency of the evidence are cognizable in habeas.

[14] The court of appeals rejected Durham's argument that his aggravated murder conviction was against the manifest weight of the evidence. *Durham,* 60 N.E.3d at 577.

sufficiency or manifest weight of the evidence. (*See* Doc. No. 6 at 27; *see also* Doc. No. 6-1 at 171–181.)

### 1. The R&R and Durham's objections

The magistrate judge found that while Durham raised the issues in Grounds Two and Three on direct appeal to the state appellate court, his failure to raise them in his appeal to the Ohio Supreme Court resulted in the procedural default of those claims, which was not excused. Thus, the magistrate judge recommends that Grounds Two and Three be dismissed as procedurally defaulted because: (1) Durham raised the issues contained in Grounds Two and Three on direct appeal but did not raise them in his appeal to the Ohio Supreme Court, (2) Durham's procedural default is not excused by cause and prejudice, and (3) Durham does not assert that he is actually innocent. (*Id.* at 30–33.)

In his objections, Durham contends that Grounds Two and Three were raised to the Ohio Supreme Court, any default is excused by cause and prejudice, and he is actually innocent.

### 2. De novo review

A petitioner may procedurally default a claim "by failing to raise and pursue that claim through the state's 'ordinary appellate review procedures.'" (Doc. No. 10 at 28 (quoting *O'Sullivan v. Boerckel*, 526 US. 838, 848, 119 S. Ct. 1728, 144 L. E. 2d 1 (1999)).) Procedural default may be excused if petitioner can show cause and prejudice for the default or, if petitioner is actually innocent, in order to prevent a "manifest injustice." (*See* Doc. No. 10 at 29–30 (citations omitted).)

### Appeal to the Ohio Supreme Court

Durham contends that the appellate court's decision on direct appeal concerning Grounds Two and Three was appealed to the Ohio Supreme Court. (*See* Doc. No. 11 at 4.) But an examination of the Memorandum in Support of Jurisdiction to the Ohio Supreme Court shows that the only issues appealed were ineffective assistance of trial counsel for failing to file a motion suppress Durham's statements to the police and the evidence found in Durham's vehicle. (*See* Doc. No. 6-1 at 171–181). Durham's objection to the R&R that the issues raised in Grounds Two and Three are procedurally defaulted is overruled.

### Cause and Prejudice

With respect to whether cause and prejudice excuse Durham's procedural default, the magistrate judge correctly noted that procedural default of a habeas claim may be excused if a petitioner's appellate counsel was ineffective for failing to raise the issue. However, the underlying ineffective assistance of counsel claim may not, in and of itself, be in default. (*See* Doc. No. 10 at 31–32.)

In Durham's Rule 26(B) application to reopen his appeal, Durham identified the following assignments of error not considered on appeal due to the ineffective assistance of appellate counsel: "State did not prove any of the charges based on the evidence presented. Witnesses stated that Defendant was at the location with several vehicles. Counsel had incorrect information due to not speaking with client to be clear on the facts[,]" and "[c]ounsel failed to investigate, interview witnesses, failed to communicate with defendant, minimal preparation, weak trial advocacy, little to no cross examination of witnesses[, and] did not go over all discovery." (Doc. No. 6-1 at 311, 313.)

Durham's application to reopen appears to challenge the conduct of trial counsel and does not specifically mention that appellate counsel was ineffective for failing to raise the sufficiency and manifest weight of the evidence arguments before the Ohio Supreme Court on direct appeal. In that case, Durham's ineffective assistance of appellate counsel as to those issues is itself defaulted.

Even if Durham's application to reopen could be construed as raising ineffective assistance of appellate counsel to appeal his sufficiency and manifest weight of the evidence claims to the Ohio Supreme Court on direct appeal, his application was denied by the Ohio Court of Appeals on the merits (*see id*. at 321–26) and Durham did not appeal that denial to the Ohio Supreme Court, also resulting in procedural default of any claim for ineffective assistance of appellate counsel.

Accordingly, because Durham's ineffective assistance of appellate counsel claim is procedurally defaulted, ineffective assistance of appellate counsel cannot serve as cause for his procedurally defaulted habeas claims in Grounds Two and Three that the evidence was not sufficient to support his convictions. *See Edwards v. Carpenter*, 529 U.S. 446, 453–54, 120 S. Ct. 1587, 146 L. Ed. 2d 518 (2000) ("[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted[,]" and, unless the state prisoner can "satisfy the cause-and-prejudice standard' for the procedurally defaulted ineffective assistance of counsel claim, that claim cannot serve as cause for another procedurally defaulted claim.).

In his objection, Durham argues that he was not able to appeal the denial of his Rule 26(B) application to the Ohio Supreme Court due to issues concerning access to the prison law library. (*See* Doc. No. 11 at 6–8.) Durham appears to rely upon *State v. Smith*, No.

101105, 2015 WL 4480267 (Ohio Ct. App. July 20, 2015) in support of this argument (*id.* at 6). *Smith* does not help Durham's cause. In *Smith*, defendant sought to establish good cause for failing to file a Rule 26(B) motion to reopen within 90 days after journalization of the appellate judgment because of limited access to the prison law library. *See Smith*, 2015 WL 4480267, at *1. But the court of appeals rejected Smith's untimely application for cause, finding that courts "have repeatedly rejected the claim that limited access to a law library and legal materials [as well as] [p]rison riots, lockdowns, and other library limitations . . . constitut[e] good cause." *Id.* at *1. Durham's argument concerning prison conditions does not provide cause for procedural default of his Rule 26(B) application to reopen.

Durham's objection that he had cause for procedurally defaulting Grounds Two and Three of his habeas claims for relief is overruled, and in the absence of cause, the Court need not consider the prejudice prong. *Smith v. Murray*, 477 U.S. 527, 533, 106 S. Ct. 2661, 91 L. Ed. 2d 434 (1986) ("We need not determine whether petitioner has carried his burden of showing actual prejudice from the allegedly improper admission of Dr. Pile's testimony, for we think it self-evident that he has failed to demonstrate cause for his noncompliance with Virginia's procedures.").

### *Fundamental miscarriage of justice—actual innocence*

Even in the absence of cause and prejudice, a petitioner may be able to overcome a procedural default that would otherwise bar habeas review if petitioner can establish that failure to review his habeas claim will result in a "fundamental miscarriage of justice." *Edwards*, 529 U.S. at 451 (citing *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S. Ct. 2546, 115 L. Ed. 2d 640 (1991)). The exception for a fundamental miscarriage of justice

has been explicitly tied to a petitioner's ability to demonstrate actual innocence. *Schlup v. Delo,* 513 U.S. 298, 321, 115 S. Ct. 851, 130 L. Ed. 2d 808 (1995). Actual innocence requires a showing of factual innocence, not mere legal insufficiency. *Schlup*, 513 U.S. at 324; *Bousley v. United States*, 523 U.S. 614, 623, 118 S. Ct. 1604, 140 L. Ed. 2d 828 (1998) (to establish actual innocence, a habeas petitioner must show "factual innocence, not mere legal insufficiency[]"). "To succeed on a claim of 'actual innocence,' a petitioner must offer 'new reliable evidence' showing that a 'fundamentally unjust incarceration' has occurred." *Keith v. Voorhies,* No. 1:06-cv-2360, 2009 WL 185765, at *7 (N.D. Ohio Jan. 23, 2009) (citing among authority *House v. Bell,* 547 U.S. 518, 536–37, 126 S. Ct. 2064, 165 L. Ed. 2d 1 (2006)).

In the R&R, the magistrate judge noted that Durham's traverse focuses on cause and prejudice to excuse his procedural default, but Durham does not assert that he is actually innocent or present any new, reliable evidence of his innocence. (Doc. No. 10 at 32–33; *see also* Doc. No. 9.) Thus, the R&R concludes that Durham's procedural default of Grounds Two and Three Durham should not be excused in order to avoid a fundamental miscarriage of justice. (Doc. No. 10 at 33.)

In his objection to the R&R, Durham asserts that actual innocence excuses his procedural default. (Doc. No. 11 at 8–10.) As an initial matter, "[i]t is well-established that a habeas petitioner cannot raise new claims or arguments in an objection that were not presented to the Magistrate Judge[,]" and Durham's objection on the grounds of actual innocence may be overruled on that basis alone. *Pryor v. Erdos*, No. 5:20-cv-2863, 2021 WL 4245038, at *8 (N.D. Ohio Sept. 17, 2021)) (collecting cases).

Regardless, Durham's objection does not support a claim of actual innocence. First, the evidence advanced by Durham in support of his claim of actual innocence is not new evidence, but evidence in the record as recited by the court of appeals in ruling on his direct appeal. (*See* Doc. No. 11 at 8–10 (DNA evidence in the record, alcohol and beer bottles on the property, cell phone and ball cap on or near the victim's body, videotape from a security camera near the scene).) Second, the only reference in Durham's objection to new evidence is a statement that his "wife Angela Durham has new reliable evidence that is a trustworthy alibi witness account that was not presented at trial." (*Id*. at 8.) But this vague and conclusory statement, without more, is insufficient to establish actual innocence. *See Henderson v. Smith*, No. 3:16-cv-567, 2019 WL 12631694, at *5 (W.D. Ky. Feb. 11, 2019) (affidavit of witness that his testimony was "very false and untrue" concerning petitioner's involvement in death of victim was "too vague and conclusory . . . to rise to the requisite level of reliable proof of actual innocence"); *Henderson v. Bottom*, No. 18-5747/19-5179, 2019 WL 12631623, at *9 (6th Cir. June 28, 2019) (petitioner's conclusory assertion that hospital records not produced at trial purportedly showing a "serious laceration injury" demonstrate that he is actually innocent because he could not have arranged or participated in the shooting in light of the laceration is insufficient to overcome the procedural default of habeas claims). Durham's objection that his procedural default of Grounds Two and Three is excused based upon actual innocence is overruled.

Upon de novo review, Durham's objections to the R&R that Grounds Two and Three are procedurally defaulted are overruled and Grounds Two and Three are dismissed.

### C.  Ground Four

In Ground Four, Durham claims that his sentencing by the trial court upon remand from his direct appeal was improper, that he was denied effective assistance of counsel at the remand hearing, and counsel failed to appeal his resentence as instructed. (*See* Doc. No. 1 at 10; Doc. No. 10 at 27.)

The relevant portions of the state appellate court's decision on direct appeal follows.

{¶ 2} In May 2014, Durham was indicted by the Cuyahoga County Grand Jury for the following counts relating to the death of Herman Coleman ("Coleman"):

(1) aggravated murder (R.C. 2903.01(A)) with a 1–year firearm specification (R.C. 2941.141(A)) and a 3–year firearm specification (R.C. 2941.145(A));

(2) murder (R.C. 2903.02(B)) with a 1– and 3–year firearm specification;
(3) felonious assault (R.C. 2903.11(A)(1)) with a 1– and 3–year firearm specification, a notice of prior conviction (R.C. 2929.13(F)(6)), a repeat violent offender specification (R.C. 2941.149(A)) in CR–92–283608, and a notice of prior conviction and repeat violent offender specification in CR–92–278596;

(4) felonious assault (R.C.2903.11(A)(2)) with a 1– and 3–year firearm specification, 2 notices of prior conviction, and 2 repeat violent offender specifications; and

(5) having a weapon while under disability (R.C. 2923.13(A)(2)).

{¶ 3} On January 27, 2015, Durham was convicted by the trial court, after waiving a jury trial on the issue, of having a weapon while under disability. He was convicted by the jury on all remaining counts, with the trial court determining that the repeat violent offender specifications would be considered at sentencing.

{¶ 4} On January 28, 2015, the parties agreed at the sentencing that counts 1, 2, 3, and 4 are allied offenses and that the 1– and 3–year firearm specifications merged. The state elected to have Durham sentenced on the aggravated murder count with 3–year firearm specification, for which Durham was sentenced to life with parole at 30 years plus a consecutive 3 years for the firearm specification. He received a concurrent 36–month sentence on count 5, having a weapon while under disability, with

postrelease control advisement. Defendant timely appeals his convictions for aggravated murder, murder, and felonious assault.

*Durham*, 60 N.E.3d at 557.

The court of appeals reversed Durham's aggravated murder conviction, but affirmed the murder and felonious convictions and remanded for sentencing:

> {¶ 154} We find that, as to the aggravated murder conviction, Durham's argument on the sufficiency of the evidence has merit. The aggravated murder conviction is hereby reversed. The convictions for murder and felonious assault are affirmed.
>
> ****
>
> {¶ 183} Based on our findings regarding the sufficiency of the evidence, the conviction and sentence for aggravated murder is reversed; and the case is remanded for sentencing on the remaining counts of murder and felonious assault, with specifications. The conviction for having a weapon while under disability has not been contested.

*Id.* at 576 (footnote removed), 581.

When Durham was resentenced August 11, 2016 on remand, the state elected to have Durham sentenced on the murder conviction (Count 2) and Durham was sentenced to life with the possibility of parole after 15 years, consecutive to a three-year term for the merged gun specifications, concurrent to a three-year term for weapons under disability (Count 5), for an aggregate sentence of life with the possibility of parole after 18 years. (*See* Doc. No. 10 at 24; Doc. No. 6-1 at 218–19.)

On June 14, 2017, Durham filed an untimely appeal of the resentencing order pursuant to Rule 5(A). (*See* Doc. No. 10 at 25; Doc. No. 6-1 at 220–25.) In his motion to file a delayed appeal, Durham stated that despite his instructions to do so, his trial counsel failed to appeal the resentencing order and that ineffective assistance of counsel deprived him of his right to appeal, but Durham did not identify the actual challenge to his

resentencing that counsel failed to appeal. (*See* Doc. No. 10 at 25; Doc. No. 6-1 at 230–34.) On June 20, 2017, Durham's motion for leave to file a delayed appeal under Rule 5(A) was denied and his appeal was dismissed. (Doc. No. 10 at 25; Doc. No. 6-1 at 239–40.) Durham sought reconsideration, which was denied. (Doc. No. 10 at 25; Doc. No. 6-1 at 241–45.) Durham then appealed to the Ohio Supreme Court, stating that he was denied effective assistance of counsel when trial counsel disregarded his instructions to appeal the resentencing journal entry. (*See* Doc. No. 10 at 25; Doc. No. 6-1 at 246–54.) The Ohio Supreme Court declined jurisdiction. (*See* No. 10 at 25; Doc. No. 6-1 at 257.)

### 1. The R&R and Durham's objections

The magistrate judge determined that Durham's habeas claim concerning his resentencing was procedurally defaulted because he never fairly presented his claim regarding resentencing to the state courts for consideration, and the default was not excused by cause and prejudice or actual innocence. Thus, the R&R recommended that Ground Four concerning Durham's resentencing be dismissed as procedurally defaulted and non-cognizable on habeas review and, in any event, that it lacks merit. (*See* Doc. No. 10 at 33–36.)

In his limited objection to the R&R as to Ground 4, Durham appears to argue, as he did with respect to Grounds Two and Three, that prison conditions prevented him from filing a timely notice of appeal regarding his resentencing and that any procedural default should be excused because he is actually innocent. (*See* Doc. No. 11 at 7–8.) He also objects to the magistrate judge's "admonishment" concerning the filing of successive Rule 26(B) petitions. (*Id.* at 26–27.)

### 2. De novo review

For the reasons already stated in the Court's de novo review of Grounds Two and Three, Durham's objections to excuse his procedural default of Ground Four of the petition are unavailing. Prison conditions, including access to the prison library, do not provide cause to excuse procedural default, nor has Durham established actual innocence.

Durham's objection to the magistrate judge's "admonishment" is neither a proper objection nor does it address the recommendation that Ground Four should be dismissed as procedurally defaulted, non-cognizable and, in any event, lacking in merit. Durham's objections to Ground Four are overruled.

### IV. Conclusion

To the extent that Durham did not object to the magistrate judge's report and recommendation, he waived his right to a de novo review. With respect to the issues to which Durham filed a proper objection, the Court conducted a de novo review. Durham's objections are overruled and the recommendations of the R&R are adopted. Accordingly, Durham's petition is denied and dismissed in its entirety.

The Court certifies that an appeal from this decision could not be taken in good faith and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. §§ 1915(a)(3), 2253(c); Fed. R. App. P. 22(b).

**IT IS SO ORDERED**.

Dated: March 25, 2022

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**